UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JULIUS BRADFORD,<br>   Petitioner,<br>   v.<br>WILLIAM GITTERE, *et al.*,<br>   Respondents. | Case No. 2:13-cv-01784-RFB-EJY<br>ORDER |

I. Introduction

This action is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 by Julius Bradford, a Nevada prisoner. Bradford is represented by appointed counsel. He is serving what in the aggregate amount to life prison sentences with the possibility of parole after forty years, on convictions in Nevada's Eighth Judicial District Court (Clark County) for murder with use of a deadly weapon and attempted robbery with use of a deadly weapon. The merits of Bradford's Second Amended Habeas Petition are before the Court, as well as his Motion for an Evidentiary Hearing. In this order, the Court grants Bradford's Motion for an Evidentiary Hearing on Ground 2 of his Second Amended Petition and denies the Motion without prejudice as to Bradford's other claims. The Court will revisit the Motion for Evidentiary Hearing when addressing Bradford's remaining claims on the merits and will schedule the evidentiary hearing.

II. Background

The following facts are as described in the Second Amended Petition:

.... On the morning of June 8, 2003, Benito Zambrano-Lopez was walking toward a grocery store near his house [in Las Vegas]. He had just over $100 cash on him and he was wearing a watch. Tyrone Williams, a sixteen-year old, approached Mr. Zambrano-Lopez and started a fight. Two of Mr. Williams' friends, Steven Perry, a seventeen-year old, and Mr. Bradford, who had just turned eighteen, were walking nearby. At some point, they both stepped in to assist Mr. Williams, who was losing the fight. Soon afterward, Mr. Williams pulled out a gun and shot Mr. Zambrano-Lopez four times. Mr. Bradford and Mr. Perry ran away immediately after the first shot was fired, and Mr. Williams followed soon after. None of Mr. Zambrano-Lopez's belongings, including the cash or his watch, were taken from him. Mr. Zambrano-Lopez died the next day, and the state charged Mr. Bradford with felony murder.

* * *

Only one eyewitness testified at trial. Tracy Jimenez testified that she was walking down the street with her young daughter when she saw the three men surround Mr. Zambrano-Lopez, hitting and kicking him. She said that Mr. Zambrano-Lopez fought back to defend himself. She testified that Mr. Williams then pulled out a gun and shot Mr. Zambrano-Lopez, while Mr. Bradford and Mr. Perry immediately fled. At the preliminary hearing, Ms. Jimenez testified she did not see the men try to take anything from Mr. Zambrano-Lopez. At trial five years later, she testified that, after Mr. Bradford had fled, Mr. Williams "pat[ted]" down Mr. Zambrano-Lopez's body.

Two other state's witnesses provided equivocal testimony about what they heard Mr. Williams and Mr. Perry say about the murder. Neither testified that Mr. Bradford said anything about it. Chetique Vercher testified that after the shooting, she was in the same house as Mr. Williams, Mr. Perry, and Mr. Bradford. She testified that the crime was "supposed to be robbery," but did not say that she actually heard anyone say that. She also testified that she heard Mr. Perry say that Mr. Bradford had told Mr. Williams to shoot Mr. Zambrano-Lopez. Nelson Rodgers, a friend of Mr. Bradford's, testified he was in the house with Ms. Vercher and the others after the shooting. Mr. Rodgers testified that he heard Mr. Perry and Mr. Williams talk about a robbery, but that Mr. Bradford was not present during that discussion.

.... [T]he state presented a recorded conversation between Mr. Bradford and Ms. Vercher, which took place shortly before Mr. Bradford's preliminary hearing. During the call, Mr. Bradford told Ms. Vercher to say "nothing about the rees-obbery":

> Look, come to court, right come to court, ah just tell them. Cuz, don't say nothing about the rees-obbery, cuz. Don't say nothing about that, cuz. All right. I am tell you cuz don't because that's what they got me on. That's why they are trying to stick me with the hezour.

Ms. Vercher testified that she understood Mr. Bradford was asking her not to say anything about a robbery. Mr. Bradford testified that he told her not to say anything about a robbery because there had, in fact, been no robbery, and the state was trying to make the fight look like one.

2

> Mr. Bradford's former counsel, Sean Sullivan, also testified at trial about the phone call, after counsel convinced Mr. Bradford to waive the attorney-client privilege. Mr. Sullivan testified that, just before Mr. Bradford's call to Ms. Vercher, he met with Mr. Bradford and "broke down" the felony murder rule....
>
> Ashton Parker, a jailhouse snitch who got a deal in exchange for his testimony, testified about conversations he claimed he had with Mr. Bradford while they were incarcerated in the same module. He testified that Mr. Bradford admitted both that the crime was a robbery and that he directed Mr. Williams to "smoke" Mr. Zambrano-Lopez. Mr. Parker also testified that Mr. Bradford gave him a map to Ms. Vercher's house, and asked him to shoot into Ms. Vercher's house to intimidate her. The state admitted a copy of the map, and other evidence established that Mr. Bradford's fingerprints were on the map and that it matched his handwriting.
>
> To counter the jailhouse informant's allegations, the defense focused on his incentive for lying — a plea deal with the state involving a closed conviction....
>
> .... Although Mr. Bradford confirmed [in his testimony at trial] that neither he nor the other two men tried to rob Mr. Zambrano-Lopez, and testified that he had no idea Mr. Williams intended to shoot Mr. Zambrano-Lopez, his testimony on collateral issues left the jury with the impression that Mr. Bradford was the type of man who deserved to go to prison.
>
> .... Trial counsel elicited an admission that Mr. Bradford had drawn the map and given it to Mr. Parker. While he denied the map actually directed Mr. Parker to Ms. Vercher's house, her address was written on it. Likewise, while Mr. Bradford testified that he was actually giving Mr. Parker directions to his ex-girlfriend's house, which was near Ms. Vercher's, he also testified that he provided the directions so that Mr. Parker could rob her....
>
> .... On cross, the state elicited [evidence] that Mr. Bradford was a gang member who earned his stripes by selling drugs for his gang. The state also played for the jury a surveillance videotape from a 7-11 from an unrelated case, which the state argued depicted Mr. Bradford using an ATM card that he had stolen at gunpoint.

Second Am. Pet. at 2-5, ECF No. 67 (argument and citations to record omitted).

At Bradford's first trial in 2004, the jury found him guilty of murder with use of a deadly weapon and attempted robbery with use of a deadly weapon. On June 3, 2004, the trial court sentenced Bradford to two consecutive life sentences for murder with use of a deadly weapon, with parole eligibility after twenty years, and two consecutive sentences of six years for the attempted robbery with use of a deadly weapon, with parole eligibility after two years, to be served concurrently with the life sentences. See J. of Conviction Ex. 54, ECF No. 25-11.

Bradford appealed, and on April 18, 2006, the Nevada Supreme Court reversed and remanded for a new trial, ruling that the trial court gave the jury improper instructions regarding accomplice and co-conspirator liability as well as adoptive admissions. See Order of Reversal and Remand Ex. 60 at 2-9, ECF No. 25-17.

On remand, the trial court initially reappointed Sean Sullivan as Bradford's counsel. However, Sullivan notified the court that he had a conflict of interest because he was a potential witness in the retrial, and he was permitted to withdraw. The court then appointed another attorney, Mace Yampolsky, to represent Bradford in the retrial. See Order Appointing Counsel Ex. 63 at 2, ECF No. 25-20; Tr. of Proceedings Ex. 65 at 2-15, ECF No. 25-22; Tr. of Proceedings Ex. 66 at 3-4, ECF No. 25-23; Order Appointing Counsel Ex. 67 at 2, ECF No. 25-24. At a pretrial hearing on July 27, 2007, Bradford waived the attorney-client privilege as to the subject of Sullivan's testimony and Sullivan testified; his testimony was video recorded. See Tr. of Trial Ex. 74, ECF No. 25-31.

Bradford's retrial commenced on July 30, 2007. See Tr. of Trial Exs. 77, ECF No. 26, 78, ECF No. 26-1, 82, ECF No. 27, 87, ECF No. 28, 90, ECF No. 28-3. Bradford was again found guilty of murder with use of a deadly weapon and attempted robbery with use of a deadly weapon. See Tr. of Trial Ex. 90 at 8, ECF No. 28-3; Verdict Ex. 94 at 2-3, ECF No. 28-7. He was again sentenced to two consecutive life sentences for murder with use of a deadly weapon, with parole eligibility after twenty years, and two consecutive sentences of six years in prison for the attempted robbery with use of a deadly weapon, with parole eligibility after two years, to be served concurrently with the life sentences. See Tr. of Sentencing Hr'g Ex. 100 at 5, ECF No. 28-13; Am. J. of Conviction Ex. 102 at 2-4, ECF No. 28-15.

Bradford appealed from the amended judgment, and the Nevada Supreme Court affirmed on June 30, 2009. See Order of Affirmance Ex. 111 at 2-12, ECF No. 29-4. Bradford filed a petition for rehearing and a petition for en banc reconsideration, both of which were denied. See Order Denying Rehearing Ex. 113 at 2 (ECF No. 29-6); Order Den. En Banc Recons. Ex. 115 at 2, ECF No. 29-8.

Bradford then filed a Petition for Writ of Habeas Corpus in state district court. See Pet. for Writ of Habeas Corpus (Post Conviction) Ex. 123, ECF No. 29-18. The state district court denied that petition on May 13, 2011. See Findings of Fact, Conclusions of Law and Order Ex. 127 at 3-9, ECF No. 29-22. Bradford appealed, and the Nevada Supreme Court affirmed on July 23, 2013. See Order of Affirmance Ex. 154 at 2-6, ECF No. 34.

On May 4, 2012, Bradford filed a second Petition for Writ of Habeas Corpus in the state district court. See Pet. for Writ of Habeas Corpus (Post-Conviction) Ex. 138, ECF No. 30-3. The state district court dismissed that petition on July 30, 2012, upon a motion by the State, ruling Bradford's claims to be time-barred and successive. See Order Grant'g. State's Resp. and Mot. to Dismiss Def.'s Pet. for Writ of Habeas Corpus (Post-Conviction) Ex. 141 at 2-3, ECF No. 31-2. Bradford appealed, and the Nevada Supreme Court affirmed on October 16, 2014. See Order of Affirmance Ex. 174 at 2-6, ECF No. 42-3. Bradford filed a petition for rehearing, which was denied. See Order Den. Reh'g Ex. 186 at 2-3, ECF No. 62-4.

This Court received Bradford's federal Petition for Writ of Habeas Corpus initiating this action on September 27, 2013. ECF No. 1. On December 3, 2013, the Court appointed the Federal Public Defender to represent Bradford. See ECF No. 16. With counsel, Bradford filed an amended habeas petition on August 12, 2014. ECF No. 22. On March 31, 2015, this action was stayed upon a motion by Bradford pending further proceedings in state court. ECF No. 53.

Bradford filed a third state-court habeas petition on August 29, 2014. See Pet. for Writ of Habeas Corpus (Post-Conviction) Ex. 172, ECF No. 42-1. The state district court dismissed that petition on March 25, 2015 upon a motion by the State, ruling Bradford's claims to be time-barred. See Findings of Fact, Conclusions of Law and Order Ex. 189 at 2-9, ECF No. 62-7. Bradford appealed, and the Nevada Court of Appeals affirmed on July 27, 2016. See Order of Affirmance Ex. 197 at 2-8, ECF No. 62-15.

The stay of this action was lifted on January 13, 2017, ECF No. 66, and Bradford filed a Second Amended Habeas Petition, which is the operative petition in this matter, Second Am. Pet. for a Writ of Habeas Corpus, ECF No. 67. In the Second Amended Petition, Bradford asserts the following grounds for relief:

> Ground 1: Bradford's federal constitutional rights were violated because his trial counsel was ineffective "for presenting inculpatory testimony from Mr. Bradford's former attorney, Sean Sullivan, about a privileged conversation Mr. Sullivan had with Mr. Bradford regarding the felony murder rule."
>
> Ground 2: Bradford's federal constitutional rights were violated because his trial counsel was ineffective "for failing to advise Mr. Bradford that he faced the death penalty if he did not accept the state's plea bargain offers."
>
> Ground 3: Bradford's federal constitutional rights were violated because his trial counsel was ineffective for improperly advising him to testify in his own defense.
>
> Ground 4: Bradford's federal constitutional rights were violated because "[t]he trial court improperly admitted irrelevant and prejudicial evidence that Mr. Bradford was a member of the Crips gang who sold drugs to benefit his gang."
>
> Ground 5: Bradford's federal constitutional rights were violated because his trial counsel was ineffective "for opening the door to the damaging gang affiliation evidence during direct examination."
>
> Ground 6: Bradford's federal constitutional rights were violated because "[t]he trial court improperly admitted a videotape purportedly showing Mr. Bradford using an ATM card he stole at gunpoint."
>
> Ground 7: Bradford's federal constitutional rights were violated because his trial counsel was ineffective "for opening the door to damaging videotape evidence of an unrelated robbery during direct examination."
>
> Ground 8: Bradford's federal constitutional rights were violated because "[t]he trial court failed to provide the jury with a limiting instruction regarding improperly admitted bad act evidence."
>
> Ground 9: Bradford's federal constitutional rights were violated because his trial counsel was ineffective "for failing to request a limiting instruction once he opened the door to damaging bad act evidence."
>
> Ground 10: Bradford's federal constitutional rights were violated because "[t]he trial court failed to accurately describe the elements of murder with a deadly weapon and robbery with a deadly weapon, relieving the prosecution of its burden to prove every element of the charges beyond a reasonable doubt."
>
> Ground 11: Bradford's federal constitutional rights were violated because his trial counsel was ineffective "for failing to ensure the jury received the proper instructions regarding the meaning of 'use of deadly weapon.'"

> Ground 12: Bradford's federal constitutional rights were violated because "[t]he trial court failed to properly instruct the jury on adoptive admissions."
>
> Ground 13: Bradford's federal constitutional rights were violated because his trial counsel was ineffective "for failing to request an adequate instruction on adoptive admissions."
>
> Ground 14: Bradford's federal constitutional rights were violated because his trial counsel was ineffective "for failing to request and review recordings of phone calls of a key prosecution witness."
>
> Ground 15: Bradford's federal constitutional rights were violated because "[t]he prosecution withheld material exculpatory evidence that a state [witness] received a material benefit in exchange for his testimony."
>
> Ground 16: Bradford's federal constitutional rights were violated because "[t]here was insufficient evidence to support Mr. Bradford's murder with a deadly weapon and [attempted] robbery with a deadly weapon convictions."
>
> Ground 17: Bradford's federal constitutional rights were violated as a result of the "cumulative effect of the constitutional errors in his case."

ECF No. 67 at 14-65.

On September 11, 2017, the Respondents filed a Motion to Dismiss, ECF No. 73, and on November 27, 2017, Bradford filed a Motion for Evidentiary Hearing, ECF No. 77. The Court denied both of those motions without prejudice on April 12, 2018, determining that the issues raised in the Motion to Dismiss would be better considered in conjunction with the merits of Bradford's claims after Respondents filed an answer and Bradford a reply. ECF No. 88.

The Respondents filed an answer on March 25, 2019, ECF No. 98, and Bradford filed a reply on August 7, 2019, ECF No. 116. Bradford also filed a Motion for Evidentiary Hearing. ECF No. 117. Respondents filed an opposition to the Motion for Evidentiary Hearing, ECF No. 119, and Bradford replied, ECF No. 120.

III.  Discussion

In Ground 2, Bradford claims that his federal constitutional rights were violated because his trial counsel was ineffective "for failing to advise Mr. Bradford that he faced

7

the death penalty if he did not accept the state's plea bargain offers." ECF No. 67 at 23–26.

Bradford claims that before his first trial, the State offered a plea deal whereby Bradford would have pled guilty to second-degree murder with use of a deadly weapon and conspiracy to commit robbery in this case, and second-degree murder with use of a deadly weapon and conspiracy to commit robbery in the then-uncharged "Limongello" case, and the State would recommend concurrent prison sentences of twenty years to life in prison on all four crimes. See Tr. of Proceedings Ex. 49 at 5-6, ECF No. 25-6.

Bradford acknowledges that Sean Sullivan, the attorney who represented him at his first trial, advised him to accept the State's offer, but Bradford rejected it. See id.; Decl. of Julius Bradford Ex. 167 at 2, ECF No. 34-13; Decl. of Sean Sullivan Ex. 168 at 2-3, ECF No. 34-14. However, Bradford claims that Sullivan did not investigate the Limongello case, beyond news reports and information he received from Bradford, and did not advise Bradford that if he was convicted in the this case, the State could seek the death penalty in the Limongello case and use the conviction in this case as an aggravating circumstance, whereby Bradford could be sentenced to death. Decl. of Julius Bradford Ex. 167 at 2-3, ECF No. 34-13; Decl. of Sean Sullivan Ex. 168 at 2, ECF No. 34-14.

Bradford further claims that after the conviction from his first trial was reversed and the case remanded for retrial, there were further plea negotiations while Sullivan was still representing him, but there is no evidence indicating the terms discussed at that time, and the parties ultimately "were unable to negotiate the matter." See Tr. of Proceedings Ex. 66 at 3, ECF No. 25-23; Decl. of Sean Sullivan Ex. 168 at 3, ECF No. 34-14. Again, Sullivan did not advise Bradford that if convicted in this case he could face a death sentence in the Limongello case. ECF No. 34-14 at 3. Bradford further asserts that after Mace Yampolsky replaced Sullivan as his counsel, Yampolsky did not attempt to reopen plea negotiations. ECF No. 67 at 26.

Bradford went to trial in this case and was convicted, then later charged with the Limongello murder, for which he was tried and convicted of first-degree murder. The

conviction in this case was used as an aggravating circumstance in the Limongello case, and he was sentenced to death. See Ex. 166 at 2-3, ECF No. 34-12; J. of Conviction Ex. 165 at 2-3, ECF No. 34-11.  The Nevada Supreme Court subsequently reversed Bradford's conviction in the Limongello case and remanded for a new trial, and Bradford represents that the State "apparently intends to seek the death penalty at his retrial . . . ." Reply at 29, ECF No. 116.

Bradford argues that had he been advised that there was a possibility that he would be sentenced to death if he was convicted in both this case and the Limongello case, he would have accepted the plea agreement offered by the State. ECF No. 34-13 at 2; see also ECF No. 67 at 26; ECF No. 116 at 32–33.

The constitutional right to effective assistance of counsel in criminal proceedings extends to the plea-bargaining process, see Missouri v. Frye, 566 U.S. 134, 140–44 (2012); Lafler v. Cooper, 566 U.S. 156, 162 (2012), as does the Strickland standard, see Lafler, 566 U.S. at 162–63. In the context of plea bargaining, with respect to the performance prong of the *Strickland* standard, the habeas petitioner must show that his trial counsel did not adequately advise him such that he did not have "the tools he need[ed] to make an intelligent decision" regarding the plea offer. Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002). In addition, regarding the prejudice prong, the petitioner must show "that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 566 U.S. at 164.

Bradford raised this claim for the first time in state court in his third state habeas action, ECF No. 67 at 23, and it was ruled procedurally barred in that action. Therefore, this claim is potentially subject to dismissal as procedurally defaulted, unless Bradford can show that some exception to the procedural default doctrine applies. Bradford argues

that he can show actual innocence to excuse the procedural default, and he argues that he can show cause and prejudice such as to excuse the procedural default under Martinez v. Ryan, 566 U.S. 1 (2012), because of ineffective assistance of his counsel in his first state habeas action. ECF No. 116 at 3–16.

Bradford requests an evidentiary hearing on this claim. ECF No. 117 at 6–8. The Court determines that an evidentiary hearing is warranted and will grant Bradford's Motion for an Evidentiary Hearing with respect to Ground 2. The subject of the evidentiary hearing will be the claim that Bradford's trial counsel was ineffective as to the advice provided Bradford regarding the State's offer of a plea agreement. The Court does not intend for this evidentiary hearing to encompass Bradford's claim of actual innocence, his claim that his counsel was ineffective in his first state habeas action, or any other claim.

The Court will set the evidentiary hearing on Ground 2 and will set a schedule for the parties to meet and confer and submit a joint proposed prehearing scheduling order.

The joint proposed prehearing scheduling order should set an agreed upon schedule by the parties regarding necessary preparation for and exchange of information in advance of the evidentiary hearing. As to any matter upon which the parties cannot agree, the parties should include in the joint proposed prehearing scheduling order a description of the issue and the parties' positions. After the parties submit the joint proposed prehearing scheduling order, the Court will either approve the prehearing scheduling order proposed by the parties or issue a different prehearing scheduling order.

IV.     Conclusion

**IT IS THEREFORE ORDERED** that Petitioner's Renewed Motion for an Evidentiary Hearing (ECF No. 117) is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**. Petitioner is granted an evidentiary hearing on Ground 2 of his Second Amended Petition for Writ of Habeas Corpus as discussed *supra*; in all other respects, the motion is denied without prejudice. The Court will revisit the Motion for Evidentiary Hearing when addressing Bradford's other claims; the parties need not file

any further motion or briefing regarding Petitioner's request for an evidentiary hearing on his other claims.

**IT IS FURTHER ORDERED** that the evidentiary hearing granted in this order will be scheduled to begin on August 4, 2020 at 9:30 AM **by videoconference** at the Las Vegas Courtroom 7C, courtroom of the undersigned United States District Judge.

**IT IS FURTHER ORDERED** that counsel for Petitioner and counsel for Respondents are to meet and confer regarding the terms of a prehearing scheduling order and within thirty (30) days from the date of this order, file a joint proposed prehearing scheduling order, as described above. The Court will not look favorably upon any motion to extend the schedule for the filing of the joint proposed prehearing scheduling order.

DATED this 27th day of May, 2020.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE