**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

***

JULIUS BRADFORD,

Petitioner,

v.

JEREMY BEAN, *et al.*,

Respondents.

Case No. 2:13-cv-01784-RFB-EJY

**ORDER**

This habeas action is brought by Petitioner Julius Bradford under 22 U.S.C. § 2254. Before the Court is Respondents' Amended Motion to Dismiss certain claims in the Third Amended Petition as untimely, unexhausted and/or procedurally defaulted. See ECF No. 244. Also before the Court is Bradford's Motion for Evidentiary Hearing. See ECF No. 257. For the following reasons, Respondents' Motion to Dismiss is granted, in part, and denied, in part. Because the Court finds that Grounds 1, 3, 5, 7, 8, 9, and 10 do not relate back, they are dismissed as untimely. The Court defers consideration of whether Bradford can demonstrate cause and prejudice under Martinez v. Ryan, 566 U.S. 1 (2012), to overcome the procedural default of Ground 4 until the time of merits review.

## I. BACKGROUND

On June 8, 2003, Benito Zambrano-Lopez ("Zambrano-Lopez") was walking toward a grocery store near his house in Las Vegas. He had just over $100 cash on him, and he was wearing a watch. Tyrone Williams ("Williams"), a sixteen-year old, approached Zambrano-Lopez and started a fight. Two of Williams' friends, Steven Perry ("Perry"), a seventeen-year old, and Bradford, who had just turned eighteen, were walking nearby. At some point, they both stepped in to assist Williams, who was losing the fight. Soon afterward, Williams pulled out a gun and shot

Zambrano-Lopez four times. Bradford and Perry ran away immediately after the first shot was fired, and Williams followed soon after. None of Zambrano-Lopez's belongings, including the cash or his watch, were taken from him. Zambrano-Lopez died the next day. See ECF No. 227 at 3.

Bradford challenges a conviction and sentence imposed by the Eighth Judicial District Court for Clark County. In June 2004, the state court entered a judgment of conviction for murder with use of a deadly weapon and attempted robbery with use of a deadly weapon and sentenced Bradford to an aggregate term of life with the possibility of parole after forty years. See ECF No. 25-11.

On direct appeal, the Nevada Supreme Court reversed and remanded for a new trial, ruling that the trial court gave the jury improper instructions regarding accomplice and co-conspirator liability as well as adoptive admissions. See ECF No. 25-17. On remand, the trial court initially reappointed Sean Sullivan as Bradford's counsel. However, Sullivan notified the court that he had a conflict of interest because he was a potential witness in the retrial, and he was permitted to withdraw. The court then appointed another attorney, Mace Yampolsky, to represent Bradford in the retrial. ECF No. 25-20. At a pretrial hearing on July 27, 2007, Bradford waived the attorney-client privilege as to the subject of Sullivan's testimony and Sullivan testified; his testimony was video recorded.

Bradford's retrial commenced in July 2007. See ECF No. 26. He was again found guilty of murder with use of a deadly weapon and attempted robbery with use of a deadly weapon. See ECF No. 28-7. He was again sentenced to two consecutive life sentences for murder with use of a deadly weapon, with parole eligibility after twenty years, and two consecutive sentences of six years in prison for the attempted robbery with use of a deadly weapon, with parole eligibility after two years, to be served concurrently with the life sentences. See ECF No. 28-15. On appeal of the amended judgment, the Nevada Supreme Court affirmed the conviction. See ECF No. 29-4.

Bradford then filed a Petition for Writ of Habeas Corpus in the state district court. See ECF No. 29-18. The state district court denied the petition and the Nevada Supreme Court affirmed the denial of relief. See ECF Nos. 29-22, 34.

In May 2012, Bradford filed a second Petition for Writ of Habeas Corpus in the state district court. ECF No. 30-3. The state district court dismissed that petition upon a motion by the State, ruling Bradford's claims to be time-barred and successive. See ECF No. 31-2. Bradford appealed, and the Nevada Supreme Court affirmed in October 2014. See ECF No. 42-3. Bradford filed a petition for rehearing, which was denied. See ECF No. 62-4.

This Court received Bradford's federal Petition for Writ of Habeas Corpus initiating this action in September 2013. See ECF No. 1. The Court appointed the Federal Public Defender to represent Bradford. See ECF No. 16. With counsel, Bradford filed an amended habeas petition. See ECF No. 22. In March 2015, this action was stayed upon a motion by Bradford pending further proceedings in state district court. See ECF No. 53. Bradford filed a third state-court habeas petition in August 2014. See ECF No. 42-1. The state district court dismissed that petition upon a motion by the State, ruling that Bradford's claims were time-barred. See ECF No. 62-7. Bradford appealed, and the Nevada Court of Appeals affirmed. See ECF No. 62-15. The stay of this action was lifted, and Bradford filed a Second Amended Petition for Writ of Habeas Corpus. See ECF Nos. 66, 67.

Bradford filed his fourth state-court habeas petition in June 2019. See ECF No. 232-2. The state district court denied the petition, and the Nevada Court of Appeals affirmed the denial of relief. See ECF No. 232-21.

This Court granted relief on Ground Two of the Second Amended Petition and declined to consider the remaining claims, finding them moot. See ECF No. 166. The Ninth Circuit Court of Appeals reversed the grant of relief on Ground Two, finding that, because the evidence fails to show that Bradford would have accepted the plea offer had his counsel provided competent advice, there is no reasonable probability that Ground Two would have succeeded had it been raised by his post-conviction counsel. See ECF No. 183. The Ninth Circuit also reversed the Court's ruling that the remaining claims were moot and remanded for the district court's consideration. Id.

Following remand, the Court held a status check and granted Bradford's motion to dismiss counsel. See ECF No. 203. In addition, the Court granted Bradford's motion to supplement his Second Amended Petition and set a deadline for Bradford to file his supplement. See ECF No.

203. During the status check, Bradford stated his intention to add a claim, and the Court noted that Bradford could file a motion to amend his Second Amended Petition. See ECF No. 228 at 9, 11. The Court granted Bradford two extensions of time to file his Third Amended Petition. See ECF Nos. 204, 206.

On October 26, 2023, the Court entered an order noting that the deadline to file the Third Amended Petition was set for August 10, 2023, and that Bradford had not yet filed the Third Amended Petition. See ECF No. 218. The Court granted Bradford an additional 30 days to file the Third Amended Petition and informed Bradford the Court would not look favorably on any further motions to extend. See id. at 2.

On January 5, 2024, Bradford filed a motion for order to show cause why his Third Amended Petition had not been mailed to the Court to be filed. See ECF No. 223. In March 2024, the Court held a status check and instructed Bradford to file his Third Amended Petition no later than March 29, 2024. See ECF No. 225. Bradford submitted his Third Amended Petition to a correctional officer for filing on March 31, 2024. See ECF No. 227. In the Third Amended Petition, Bradford asserts the following grounds for relief:

> Ground One: Both of the "aid & abet" theories of principal liability used at [Bradford's] retrial were legally insufficient—and each unconstitutionally lowered the State's "burden of proof" in violation of [the] Sixth & Fourteenth Amendment[s].
>
> Ground Two: The trial court failed to accurately describe the elements of "murder with use of deadly weapon" and "attempt robbery with use of a deadly weapon"—unconstitutionally relieving the prosecution of its burden to prove all the essential elements of the offenses.
>
> Ground Three: Mace Yampolsky was ineffective for failing to object to the State calling LVMPD Officer on Kikkert (#5741) as a witness to corroborate Tracy Jimenez'[s] hearsay.
>
> Ground Four: Mace Yampolsky and Sean Sullivan were both ineffective for failing to try to obtain an exculpatory recorded jail phone call that [Bradford] made to Chetique Vercher [on] August 6, 2003[,] related to threats made by Ashton Parker.
>
> Ground Five: The State prosecutors withheld impeachment evidence and exculpatory evidence from the defense that also allowed them to present false testimony to the jury.
>
> 1. Ashton Parker received favorable treatment in multiple battery-domestic violence cases between May 2004 and August 2007 as material benefits related to his testimony that were not disclosed.

> 2. The suppressed evidence—phone calls between Chetique Vercher and Aaron Daniels related to [Bradford] August 6, 2003 phone call to Ms. Vercher[,] warning her that Ashton Parker may try to harm her. The State suppressed [the] phone calls.
>
> 3. The State suppressed statements and offers made at an undisclosed meeting [among] Chetique Vercher, prosecutors, and LVMPD detectives in July 2003.

> Ground Six: There was not sufficient evidence to support [Bradford's] conviction(s) for murder with use [of a] deadly weapon and attempt robbery with use [of a] deadly weapon, violating [his] Fourteenth Amendment due process right.
>
> Ground Seven: The "judgment of conviction" in this case is invalid and unlawful because it does not include credit for all of the time served up to the date of sentencing, violating [Bradford's] rights.
>
> Ground Eight: The "felony murder rule" and "implied malice" jury instructions unconstitutionally lowered the State's burden of proof by creating evidentiary presumptions.
>
> Ground Nine: [Bradford] and other men of color (minorities) receive disparate treatment in Nevada court in relation to how we are charged/prosecuted by the State—and also in the quality of the defense we receive from counsel who are appointed by the State to represent [them].
>
> Ground Ten: The use of N[ev.] R[ev.] S[tat.] 195.020 and N[ev.] R[ev.] S[tat.] 200.020 to charge and try [Bradford] for "murder" allowed [him] to be unconstitutionally convicted via terms/provisions of law which were repealed by the Nevada Legislature.
>
> Ground Eleven: The "adoptive admissions" statute N[ev.] R[ev.] S[tat.] 51.035—as judicially interpreted and applied in this case—is unconstitutional. Its use violated [Bradford's] rights to freedom of speech and due process.
>
> Ground Twelve: The cumulative effect of the constitutional errors in this case deprived [Bradford] of [his] rights to a fair trial and due process of law—in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

ECF No. 227.

## II. DISCUSSION

In December 2024, Respondents filed a motion to dismiss. See ECF No. 238. The Court instructed Respondents to amend their motion to dismiss to address whether the Third Amended Petition is barred by 28 U.S.C. § 2244(b) (regarding successive petitions) and the case law interpreting that provision. Respondents filed their amended motion to dismiss, asserting that the Third Amended Petition is not a successive petition under 28 U.S.C. § 2244(b) and arguing that

Grounds 1, 3, 4, 5.1, 5.2, 5.3, 7, 8, 9, 10, 11 and 12 should be dismissed as untimely because they do not relate back to a timely filed petition. Respondents also argue that Grounds 1, 7, and 11 are unexhausted and that Ground 4 is procedurally defaulted.

**A. Whether the Third Amended Petition is Successive.**

The Court instructed Respondents to amend their motion to dismiss to address whether the Third Amended Petition is barred by 28 U.S.C. § 2244(b) (regarding successive petitions) and the caselaw interpreting that provision, Beaty v. Schriro, 554 F.3d 780 (9th Cir. 2009) and Balbuena v. Sullivan, 980 F.3d 619 (9th Cir. 2020). In other words, the Court asked: first, whether Bradford's Third Amended Petition be treated as a motion to amend; and second, whether the motion to amend be denied as a request to file a successive petition without the authorization of the Court of Appeals, as required by 28 U.S.C. § 2244(b)(3)?

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally bars second or successive habeas petitions. Under 28 U.S.C. § 2244(b)(3), before a second or successive petition is filed in the federal district court, a petitioner must move in the court of appeals for an order authorizing the district court to consider the petition. A federal district court does not have jurisdiction to entertain a successive petition absent such permission. See Brown v. Muniz, 889 F.3d 661, 667 (9th Cir. 2018).

Generally, "a petition will not be deemed second or successive unless, at a minimum, an earlier-filed petition has been finally adjudicated." Goodrum v. Busby, 824 F.3d 1188, 1194 (9th Cir. 2016) (citing Woods v. Carey, 525 F.3d 886, 889 (9th Cir. 2008)). "Thus, when a petitioner files a new petition while his first petition remains pending, courts have uniformly held that the new petition cannot be deemed second or successive." Id. (citations omitted).

In Woods v. Carey, a *pro se* petitioner filed his first habeas petition in the district court. 525 F.3d 886 (9th Cir. 2008). Before the petition had been fully adjudicated, he filed a second petition in the same court. The district court dismissed the second petition on the ground that it was "second or successive" under § 2244(b)(3). The Ninth Circuit held that the district court erred by regarding the new petition as second or successive because, at the time the new petition was filed, the first petition remained pending and had not been finally adjudicated. See id. at 888–90.

The court further held that, because the petitioner was proceeding *pro se*, the district court was required to construe the new petition as a motion to amend the first petition.

Because the Ninth Circuit reversed this Court's decision to grant habeas relief and remanded for consideration of Bradford's remaining claims, the Court finds that Bradford's petition has not been fully adjudicated and construes the Third Amended Petition as a motion to amend. Under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be freely given when justice so requires. "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). Moreover, "[t]he district court is required to construe a *pro se* petition more liberally than it would construe a petition drafted by counsel." Knaubert v. Goldsmith, 791 F.2d 722, 729 (9th Cir.), cert. denied, 479 U.S. 867 (1986).

The Court "considers the following five factors to assess whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013) (internal punctuation omitted). "[D]elay alone—no matter how lengthy—is insufficient ground for denial of leave to amend." Webb, 655 F.2d at 980.

Because motions seeking leave to amend should be liberally granted, the Court will permit Bradford to amend his petition and will address Respondents' amended motion to dismiss.

**B. Whether Bradford can Demonstrate Actual Innocence.**

The Court finds that, liberally construed, Bradford argues that he can overcome any procedural hurdle because he can demonstrate that he is actually innocent. He asserts that the State presented insufficient evidence to establish that he was an accomplice, to convict him of attempted robbery, or to establish that he aided and/or abetted Williams's use of a firearm to shoot the victim. In support of this argument, Bradford relies on the Nevada Supreme Court's 2006 reversal and remand order, asserting that the Nevada appellate court held that Bradford's alleged conduct was not sufficient to establish criminal liability. See ECF No. 253 at 22.

Demonstrating actual innocence is a narrow "gateway" by which a petitioner can obtain

federal court consideration of habeas claims that are otherwise procedurally barred, including claims filed after the expiration of the federal limitations period. Schlup v. Delo, 513 U.S. 298, 314–15 (1995); Lee v. Lampert, 653 F.3d 929, 932 (9th Cir. 2011) (*en banc*) (A "credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass through the Schlup gateway and have his otherwise time-barred claims heard on the merits."); see also McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). In this regard, "actual innocence" means actual factual innocence, not mere legal insufficiency. See, e.g., Sawyer v. Whitley, 505 U.S. 333, 339 (1992). "To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Schlup, 513 U.S. at 324. The narrow Schlup standard is satisfied only if the new, reliable evidence, together with the evidence adduced at trial, demonstrates that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. Id. at 329.

"[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggen, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329); see also House v. Bell, 547 U.S. 518, 538 (2006) (emphasizing that the Schlup standard is "demanding" and seldom met). When conducting a Schlup gateway review, a court "must 'assess how reasonable jurors would react to the overall, newly supplemented record,' including all the evidence the petitioner now proffers." Stewart v. Cate, 757 F.3d 929, 938 (9th Cir. 2014) (quoting Lee, 653 F.3d at 945). The court's "function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." Id. (quoting House, 547 U.S. at 538).

*i. Relevant Trial Evidence*

At trial, the State argued that Williams fired his gun as part of a robbery attempt, despite the fact that Zambrano-Lopez had not been robbed. Tracy Jiminez was the only eyewitness that

testified at trial. She testified that she was walking down the street with her young daughter when she saw the three men surround Zambrano-Lopez, hitting and kicking him. Zambrano-Lopez fought back to defend himself, then Williams pulled out a gun and shot Zambrano-Lopez. Bradford and Perry immediately fled. At trial, she testified that after Bradford fled, Williams "pat[ted]" down Zambrano-Lopez's body. ECF No. 26-1 at 64-77.

Chetique Vercher testified that after the shooting she was in the same house as Williams, Perry, and Bradford. She testified that "[i]t was supposed to be robbery, but the guy started fighting back for his money." ECF No. 26-1 at 161. She further testified that she heard Perry say that Bradford told Williams to shoot Zambrano-Lopez. See id. at 182.

Nelson Rodgers testified that he was in the house with Vercher, Perry, Williams, and Bradford after the shooting. He testified that he heard Perry and Williams talk about a robbery, but Bradford was not present during that discussion. See ECF No. 27 at 137-140, 162.

The State presented a recorded conversation between Bradford and Vercher that took place shortly before Bradford's preliminary hearing. During the call, Bradford told Vercher:

> Look, come to court, right come to court, ah just tell them. Cuz, don't say nothing about the rees-obbery, cuz. Don't say nothing about that, cuz. All right. I am tell you cuz don't because that's what they got me on. That's why they are trying to stick me with the hezour.

ECF No. 26-2. Vercher testified that she understood Bradford was asking her not to say anything about a robbery. Bradford testified that he told her not to say anything about a robbery because there had, in fact, been no robbery, and the State was trying to make the fight look like one. Bradford's former counsel, Sean Sullivan, testified at trial about the phone call. Sullivan testified that before Bradford's call to Vercher, he met with Bradford and "broke down" the felony murder rule.

Ashton Parker, who got a deal in exchange for his testimony, testified about conversations he claimed he had with Bradford while they were incarcerated together. He testified that Bradford admitted both that the crime was a robbery and that he directed Williams to "smoke" Zambrano-Lopez. See ECF No. 27 at 51, 57–60. He further testified that Bradford gave him a map to Vercher's house, and asked him to shoot into her house to intimidate her. See id. The State admitted

a copy of the map, and other evidence established Bradford's fingerprints were on the map and that it matched his handwriting. See ECF No. 27-5.

Bradford testified that neither he nor the other two men tried to rob Zambrano-Lopez, and that he had no idea that Williams intended to shoot Zambrano-Lopez. See ECF No. 28 at 7-111. Trial counsel elicited an admission from Bradford that he had drawn the map and given it to Parker. Although he denied that the map actually directed Parker to Vercher's house, her address was written on it. While Bradford testified that he was giving Parker directions to his ex-girlfriend's house, which was near Vercher's house, he also testified that he provided the directions so that Parker could rob her. See ECF No. 87 at 43.

On cross-examination, the State elicited evidence that Bradford was a gang member who earned his stripes by selling drugs for his gang. The State also played for the jury a surveillance videotape from a convenience store from an unrelated case, depicting Bradford using an ATM card that he had stolen at gunpoint. See ECF No. 87 at 102–04, 180–81.

*ii. Newly Presented Evidence*

Bradford has proffered no new reliable evidence not available at trial. As stated above, a petitioner alleging actual innocence to excuse procedural default must allege some new evidence exists in support of his claim. See Schlup, 513 U.S. at 324. Instead, Bradford relies on the 2006 Nevada Supreme Court order reversing and remanding his conviction on the basis that the trial court committed plain error for issuing erroneous jury instructions regarding accomplice liability, co-conspirator liability, and adoptive admissions. See ECF No. 25-17 at 2–3. This does not constitute "new reliable evidence" within the meaning of Schlup.

Bradford asserts that the 2006 Nevada Supreme Court reversal and remand order is tantamount to an acquittal. "[A]n 'acquittal' includes 'a ruling by the court that evidence is insufficient to convict, a 'factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability,' and any other 'rulin[g] which relate[s] to the ultimate question of guilt or innocence.'" Evans v. Michigan, 568 U.S. 313, 319 (2013) (alterations in original); see also United States v. Scott, 437 U.S. 82, 91 (1978) ("A judgment of acquittal [can be] based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict.").

The Nevada Supreme Court's 2006 reversal and remand, however, was based on erroneous jury instructions, which does not amount to an acquittal as defined by the United States Supreme Court.

Bradford's assertions are, at most, attacks on the sufficiency of the evidence presented at trial, which does not satisfy the actual innocence gateway. The Supreme Court and the Ninth Circuit have stated that, even when considering only a Schlup gateway claim, "'actual innocence' means factual innocence, not mere legal insufficiency." See Jaramillo v. Stewart, 340 F.3d 877, 882 (9th Cir. 2003) (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)). Because Bradford's assertions are not enough to demonstrate that no reasonable juror would have convicted him, he cannot invoke the actual innocence exception to overcome the statute of limitations bar.

**C. Relation Back**

A new claim in an amended petition that is filed after the expiration of the AEDPA's one-year limitation period will be timely only if the new claim relates back to a claim in a timely-filed pleading under Rule 15(c) of the Federal Rules of Civil Procedure. Under Rule 15, an untimely amendment properly "relates back to the date of the original pleading" as long as it arises out of the same "conduct, transaction, or occurrence." FED. R. CIV. P. 15(c). For habeas petitions, "relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims." Mayle v. Felix, 545 U.S. 644, 659 (2005).

New claims in an amended habeas petition do not arise out of "the same conduct, transaction or occurrence" as prior claims merely because they challenge the same trial, conviction, or sentence. Mayle, 545 U.S. at 661; Hebner v. McGrath, 543 F.3d 1133, 1134 (9th Cir. 2008) ("It is not enough that the new argument pertains to the same trial, conviction, or sentence."). Rather, to properly relate back, a new claim must arise from the same collection of facts alleged in the earlier petition. Mayle, 545 U.S. at 661; Schneider v. McDaniel, 674 F.3d 1144, 1151 (9th Cir. 2012) (holding that one shared fact in two divergent legal theories was "not sufficient to conclude that they arise out of a common core of operative facts"). An amended habeas petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type" from those alleged in the timely petition. Mayle, 545 U.S. at 650.

Bradford filed his original petition before the limitations period expired on December 4, 2013. See ECF No. 1. Because Bradford filed his amended petitions, including his Third Amended Petition, after the expiration of the AEDPA one-year limitation period, the claims in his Third Amended Petition must relate back to his original petition. Here, Respondents argue that, except for Grounds 2 and 6, none of the grounds in the Third Amended Petition relate back to Bradford's timely original federal petition.

The Court finds that the underlying claims of Grounds 2, 4, 6, 11 and 12 as asserted in this Third Amended Petition relate back to the original petition and are not time-barred. Relation back does not require that "the facts in the original and amended petitions be stated in the same level of detail." Ross v. Williams, 950 F.3d 1160, 1168 n.4 (9th Cir. 2020) (noting that relation back may be appropriate if the later pleading expands or amplifies the facts alleged in the earlier pleading and stating that "[s]ufficient correspondence exists if two claims arise out of the same episode-in-suit."). Accordingly, the Court finds that Grounds 1, 3, 5, 7, 8, 9, and 10 do not relate back, and are dismissed as untimely.

**D. Exhaustion**

A petitioner challenging his state incarceration must exhaust state court remedies on a habeas claim before presenting that claim to the federal courts. 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement ensures that the state courts, as a matter of comity, will have the first opportunity to address and correct alleged violations of federal constitutional guarantees. Coleman v. Thompson, 501 U.S. 722, 730–31 (1991). "A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts." Woods v. Sinclair, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 844–45 (1999)).

To satisfy the exhaustion requirement, a claim must have been raised through one complete round of either direct appeal or collateral proceedings to the highest state court level of review available. See O'Sullivan, 526 U.S. at 844–45; Peterson v. Lampert, 319 F.3d 1153, 1156 (9th Cir. 2003) (*en banc*). A properly exhausted claim "'must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief.'" Woods, 764 F.3d at 1129 (quoting Gray v. Netherland, 518 U.S. 152, 162–63 (1996)); Castillo v.

McFadden, 399 F.3d 993, 999 (9th Cir. 2005) (fair presentation requires both the operative facts and federal legal theory upon which a claim is based).

Respondents argue that Grounds 1, 7, and 11 are wholly unexhausted. Because the Court has already determined above that Grounds 1 and 7 are untimely, the Court need not address Respondents' exhaustion arguments for these grounds.[1]

In Ground 11, Bradford alleges that the adoptive admission statute as judicially applied and interpreted in this case is unconstitutional. He further alleges that the adoptive admission jury instruction at his trial had a substantial and injurious effect on the jury's verdict. Respondents argue that Bradford failed to fairly present this claim to the Nevada appellate courts. On direct appeal, Bradford alleged that the jury was erroneously instructed on adoptive admissions in violation of his constitutional rights. ECF No. 28-19. Accordingly, liberally construing the *pro se* pleadings, the Court finds that Ground 11 is exhausted.

**E. Procedural Default**

Respondents argue that Ground 4 should be dismissed as procedurally defaulted. They argue that the Nevada Court of Appeals held that Bradford's third state habeas petition was untimely and successive pursuant to NRS 34.726(1) and NRS 34.810 and that Bradford failed to demonstrate good cause and actual prejudice to overcome those procedural bars.

A procedural default occurs when a petitioner presents a claim to the state courts, but the state court disposes of that claim on procedural grounds instead of on its merits. See Coleman v. Thompson, 501 U.S. 722, 730-31 (1991). A federal court is barred from reviewing a claim for habeas corpus relief if the state court decision regarding that claim rested on state law grounds that are both independent of the federal question and adequate to support the judgment. See id.

Procedurally defaulted claims are not barred from federal review "if the petitioner can demonstrate either (1) 'cause for the default and actual prejudice as a result of the alleged violation

[1] When a district court concludes that a particular issue is dispositive, it need not "consider alternative reasons for dismissing the petition." Cooper v. Neven, 641 F.3d 322, 327–28 (9th Cir. 2011) (rejecting Respondents contention that the district court erred by proceeding with its procedural bar analysis before first examining whether petitioner's claims were untimely, and finding that the procedural bar analysis rendered the exhaustion issue moot).

of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" Jones v. Ryan, 691 F.3d 1093, 1101 (9th Cir. 2012) (quoting Coleman, 501 U.S. at 750).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" their efforts to comply with the state procedural rule. Murray, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. See McCleskey v. Zant, 499 U.S. 467, 497 (1991). With respect to the question of prejudice, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." White v. Lewis, 874 F.2d 599, 603 (9th Cir. 1989) (citing United States v. Frady, 456 U.S. 152, 170 (1982)).

To overcome procedural default under the "fundamental miscarriage of justice" exception, a petitioner must make a credible showing of "actual innocence" by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S. at 329. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial." Id. at 324.

Under, Martinez v. Ryan, 566 U.S. 1 (2012), a petitioner can overcome procedural default of a claim of ineffective assistance of trial counsel if he can demonstrate: (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." See Trevino v. Thaler, 569 U.S. 413, 423 (2013) (quoting Martinez, 566 U.S. 1, 13–18). Nevada law requires prisoners to raise ineffective assistance of counsel claims for the first

time in a state petition seeking postconviction review, which is the initial collateral review proceeding for purposes of the Martinez rule. See Rodney v. Filson, 916 F.3d 1254, 1259–60 (9th Cir. 2019).

In Ground 4, Bradford alleges that his attorneys, Mace Yampolsky and Sean Sullivan, rendered ineffective assistance for failure to obtain an exculpatory recorded jail phone call that Bradford made to Vercher related to threats made by Parker. Respondents argue that Ground 4 must be dismissed as procedurally defaulted. Bradford, however, argues he can demonstrate cause and prejudice to overcome the procedural default.

Bradford asserts that "[t]he egregious conduct of "state actors" and/or state-appointed attorneys," constitutes cause to excuse procedural default. ECF No. 253 at 20. He argues that the Nevada Supreme Court's reversal and remand order acquitted him of his charges. In addition, he argues that his trial, appellate, and post-conviction counsel failed to advise him that the merits had been resolved in his favor pursuant to the 2006 Nevada Supreme Court order and Williams' 2004 guilty plea agreement.

Here, Bradford would face multiple procedural bars if he were to return to state court to litigate Ground 4. See, e.g., NRS 34.726, 34.810. Because Bradford argues that he can overcome the procedural default of Ground 4 because of ineffective assistance of his counsel, specifically his postconviction counsel, he advances Martinez as a basis for excusing the anticipatory default of Ground 4. The Court considers Ground 4 technically exhausted on that basis. The Court defers ruling on whether the Ground 4 is procedurally defaulted given the fact-intensive nature of the claims and Bradford's cause and prejudice arguments. The Court finds that these questions are inextricably intertwined with the merits of the claims themselves. Accordingly, the Court will defer a determination on whether Bradford can demonstrate cause and prejudice until the time of merits determination. The motion to dismiss Ground 4 as procedurally defaulted is denied. Respondents may renew the procedural default argument as to the remaining grounds in their answer.

## III. MOTION FOR EVIDENTIARY HEARING

Bradford moves for an evidentiary hearing on his gateway claim of actual innocence and

references his allegations asserted in his Third Amended Petition. Evidentiary hearings are authorized in federal habeas corpus actions by Rule 8 of the Rules Governing § 2254 Cases. However, an evidentiary hearing is not required if the issues can be resolved by reference to the state court record. See Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998) ("It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise."); see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

Bradford does not show that factual development by evidentiary hearing is warranted at this stage. The Court resolves Bradford's arguments of actual innocence on the briefing of the parties and on the extensive record before the Court without need for further factual development.

## IV. CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that Respondents' Motion to Dismiss (ECF No. 244) is **GRANTED IN PART and DENIED IN PART**. Grounds 1, 3, 5, 7, 8, 9, and 10 are **DISMISSED** as untimely.

**IT IS FURTHER ORDERED** that the Court defers consideration of whether Bradford can demonstrate cause and prejudice under Martinez, to overcome the procedural default of Ground 4 until the time of merits review.

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Evidentiary Hearing (ECF No. 257) is **DENIED WITHOUT PREJUDICE**.

**IT IS THEREFORE ORDERED** that Respondents have until November 30, 2026, to file their Answer. Bradford has 60 days after service of the Answer to file his Reply.

**DATED**: September 29, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**